## No. 6985.

LEHMAN, ABRAHAM & Co. vs. MRS. YETTE LEVY AND HUSBAND.

The suit of a creditor to annul a conveyance of property by his debtor, for any ground of fraud (except the one of giving an unjust preference by an insolvent debtor) is only prescribed in one year from the time the creditor has obtained judgment against the debtor.

Where a *dation* in payment by a husband to his wife, is attacked, after the wife's death, as fraudulent, the husband is a competent witness for the wife's succession, to prove the amount, and verify of his wife's claims against him.

The validity of a *dation* in payment made by the husband to the wife, to satisfy a judgment obtained by the wife against him, will not be impaired by the fact that the judgment was a mere consent one, resting on no evidence, when it is shown *aliunde* that the wife's claims, on which the judgment purported to rest, are legal, and real; such for example, as claims for her dotal, or paraphernal effects, alienated by the husband.

Neither the pecuniary embarrassment, nor the actual insolvency of the husband, is any obstacle to a transfer by the husband to the wife, in good faith, for the replacing of her money, or property, used; or alienated by him.

A judgment of separation of property between husband and wife which is not executed, is utterly null and void.

The failure of a wife to execute a judgment of separation of property, which she has obtained, will not impair or prejudice any claim she may have against her husband.

It will be assumed that the property transferred by the husband to the wife to replace her dotal or paraphernal effects, is fairly appraised in the act of transfer, until the contrary is shown by the party attacking the transfer.

A PPEAL from the Fifth Judicial District Court, parish of East Feliciana. *Brame,* special judge.

*Wedge & Moore* for plaintiffs and appellants.

*W. F. Kernan* and *T. B. Lyons* for defendants and appellees.

The opinion of the court was delivered by

MARR, J. In June, 1875, Lehman, Abraham & Co. recovered judgment against Abraham Levy, on which they caused execution to issue, under which the sheriff seized, and was about to sell certain real property. Mrs. Yette Oppenheimer, wife of Levy, enjoined the sale, claiming to be the owner, in virtue of a *dation en paiement,* made to her by her husband in February, 1875. Thereupon Lehman, Abraham & Co. brought this suit against the husband and wife to subject the property.

The petition charges, substantially, that the judgment in favor of Mrs. Levy against her husband, on account of which the *dation en paiement* was made, was "fraudulent, simulated, null, and void; entered into collusively between Levy and his wife to shield his property from the pursuit of his creditors, and to defraud them of their just rights."

Petitioners deny that Mrs. Levy had any paraphernal or other rights or claims against her husband, and they allege, that, "if she ever had any such claims the same were long since paid and satisfied by judgments obtained and executed against her husband, in the District Court of West Feliciana parish, and in number 319, Sixth District Court, for the parish of Orleans."

Mrs. Levy died shortly after this suit was brought; and the husband, Abraham Levy, made party in his capacity as executor, answered by general denial, and the plea of prescription of one year. The judgment of the District Court was against plaintiffs, rejecting their demand, and dismissing their suit; and they appealed.

Yette Oppenheimer was the widow of Israel Adler, who died in 1850, or 1851, leaving two minor children, issue of the marriage. At probate sale she purchased his interest in the commercial partnership of which he was a member, at the appraised value $8935 39, of which one half belonged to her as widow in community, and the other half to the two children. She and A. Levy, one of the partners of her husband, continued the business until January, 1853, when he purchased her interest for $12,000, represented by two notes for $6000 each.

In January, 1853, she married Abraham Levy, who was engaged in mercantile business, in partnership with one Bosch. Levy purchased the interest of Bosch; and, at the request of Mrs. Levy, A. Levy antici- pated the maturity of the two notes, and gave a sight draft on Oakey & Hawkins for $11,880, the amount less discount. The money, it seems, went into the hands of Abraham Levy, and was used in paying Bosch.

In March, 1856, Mrs. Levy brought suit, in the District Court of West Feliciana, against her husband, for a dissolution of the community and se- paration of property, on account of his alleged pecuniary embarrassment; and in April, 1856, she recovered judgment, decreeing the dissolution of the community, and the separation of property; giving her the adminis- tration of her paraphernal property; and placing the tutorship of the minors under her separate administration and control. There was also judgment in her favor, in her own right, for $6000, with interest, from the date of the judgment, and in her capacity as tutrix for $6426, with interest.

Execution issued on this judgment, on the twenty-ninth April; and on the twenty-fourth May it was returned by order of plaintiff's attor- neys. No subsequent proceedings seem to have been taken in the case.

In February, 1869, Mrs. Levy brought suit in the Sixth District Court for the parish of Orleans, against her husband. whom she described in her petition as being "of the city of New Orleans." She alleged his indebtedness to her in the sum of $6000, for money received by him be- longing to her, as charged in her first suit; and in the additional sums of $800, for her half of proceeds of sale of real estate received by him in 1867, and $700 for money received by him for the sale of her fur- niture. She alleged also his pecuniary embarrassment; and that she desired to conduct mercantile business on her own account, and in safety from the pursuit of his creditors: and she prayed for separation in estate, that "the community existing between them be dissolved, and that she be authorized to act as a public merchant and transact her own affairs." She also prayed for judgment against her husband for seven thousand five hundred dollars, with interest from judicial demand.

Levy did not appear; and default was taken against him. It was proven that he was insolvent and under protest, and there was final judgment against him, and in favor of his wife, according to the prayer of the petition. Execution was issued on this judgment, which was stayed by order of plaintiff's attorneys; and was returned when it had expired. Nothing more was done in this case, except that the judg- ment was recorded in West Feliciana parish, in the Book of General Mortgages, on the thirteenth October, 1873.

Levy and his wife returned to West Feliciana, it does not appear at

what time; but he purchased real property there in 1871; and it seems that his mercantile business in Feliciana was continued while he was at New Orleans, in 1869. On the ninth December, 1874, Mrs. Levy filed an affidavit, which was registered on that day, and recorded in the Book of General Mortgages on thirty-first December, in which she stated that she had brought into marriage paraphernal property, the sum of $6000, being the one half of the amount paid by A. Levy for the purchase of partnership property: that in 1869, her husband received $800, from the sale of certain real estate in the town of Clinton: that the aggregate of his indebtedness to her was $6800; and that she made this affidavit for the purpose of preserving her legal mortgage on the real estate of her husband.

On the eleventh December, 1874, Mrs. Levy brought suit against her husband, in the District Court of West Feliciana, alleging his pecuniary embarrassment, and his indebtedness to her. That she had paid her children, out of the $12,000 originally due her by her husband, their half of the price of the assets of the succession of their father, Israel Adler, $4467 69, leaving balance due her by Levy, on that account, $7532 30; in addition to which he owed her $900, her half of the price of real estate belonging to her and her children, sold in January, 1867, received by him, making total indebtedness $8432 30. She also stated that her mortgage for the sum of $6800 was duly recorded against her husband on the eighth December, 1874; and she prayed for a separation of property, and the dissolution of the community: that she have the administration of her own affairs; and that she be permitted to be a public merchant. She also prayed for judgment against her husband for $8432 30; and that her legal mortgage be recognized, to date from December 8, 1874.

Levy answered, on the same day, by general denial; and final judgment was rendered and signed the next day, twelfth December, 1874, in accordance with the prayer of the petition.

Execution issued on this judgment, which was recorded in the Book of General Mortgages on the sixth January, 1875; and the sheriff seized some lots, with the buildings and improvements on them, on the twenty-fourth February, the return day of the writ. The seizure was preserved by the sheriff by retaining a copy, and the writ was returned. On the same day, February 24, 1875, by notarial act, Levy sold and conveyed to his wife all his real property, at prices agreed upon between them aggregating $5500, and all his household and kitchen furniture, at prices aggregating $600, making total of $6100, to be credited on her judgment of December 12, 1874, and which she acknowledged receipt of in part payment and satisfaction of that judgment: and on the twenty-fifth February he sold and conveyed to her, by act before the same

notary, his horse, buggy, and harness, and two mules, for the aggregate sum of $340, which she acknowledged receipt of as an additional credit on her judgment.

We do not think the action brought by plaintiffs in this case, to subject the property, was prescribed. Article 1987, of the R. C. C., requires that suit to set aside a contract, on the single ground of the giving of an unjust preference by an insolvent debtor, shall be brought within one year after the making of the contract; while article 1994 requires suit to set aside fraudulent conveyances on other grounds to be brought within one year after the creditor has obtained judgment against the debtor. The judgment in favor of Lehman, Abraham & Co. against Levy was rendered and signed on the fifth June, 1875; and this suit was brought on the tenth, and citation served on the seventeenth May, 1876; See Petit v. Creditors, 3 La. 29; Tennessy v. Gonsoulin, 11 La. 424.

On the trial of this case Abraham Levy was offered as a witness, and his testimony was objected to, on the ground that the husband is incompetent to testify on behalf of his wife's interest; and that his testimony is inadmissible to establish the amount and verity of his wife's claims against him.

Article 2281, R. C. C., declares that "the husband can not be a witness for or against his wife, nor the wife for or against her husband." The wife died, and the husband was made party as her executor; and he appeared and answered in that capacity. He could not have testified for or against her while she lived; but we do not think the rule of exclusion applies to cases in which the husband or the wife, surviving, is called as a witness to testify for or against the succession or the heirs of the deceased spouse.

The testimony of this witness shows that the wife did not enforce her judgment obtained against him in 1856, because he arranged with his creditors: and that she did not execute her judgment obtained in 1869 for the same reason. "Pecuniary embarrassment" seems to have been Levy's normal condition; and whenever his creditors undertook to press him, he interposed an effectual barrier against their attacks. A suit by his wife for separation of property and dissolution of the community; judgment for her paraphernal rights, with recognition of her legal mortgage from the date of the marriage, and execution in the hands of the sheriff, kept them at bay, and enabled him to arrange with them on his own terms.

If these parties had not been husband and wife, we should not hesitate to say that they had combined and colluded, since 1856, to cheat and defraud his creditors, and to declare all the contracts and judgments between them simulated and void. But the wife, in legal contem-

plation, and as the truth is usually, is but the instrument in the hands of her husband when she is a party to his fraudulent devices; and her actual rights can not be prejudiced by conduct which, in a person, *sui juris* could not be characterized otherwise than as fraudulent, and void as to creditors.

The record does not show that any testimony was offered in the suit in which the judgment of December 12, 1874, was rendered; and it was simply a transaction between the husband and wife, a consent suit and consent judgment. This is not material, since that judgment, if it had been rendered on sufficient proof, would not have concluded the creditors as to the reality or the amount of the wife's claims.

The *dation en paiement* purports to have been made in consideration, and in satisfaction in part of that judgment. The judgment might be without effect as to creditors, it certainly does not conclude them; but the *dation en paiement* might be valid, because its validity would not depend on the judgment, but on the reality of the claims on which the judgment purports to have been rendered.

The R. C. Code, article 2446, specially authorizes the transfer of property, by the husband to the wife, "even though not separated, when it has a legitimate cause, as the replacing of her dotal or other effects alienated." Rabassa v. Casteen, 5 An. 493.

The embarrassment of the husband is the sole ground on which the wife is authorized to demand a separation of property. The greater the embarrassment, the greater the danger to her rights, and the greater the necessity for the separation. Mere pecuniary embarrassment, which may be only temporary, is not so serious as actual insolvency; and neither the one nor the other is any obstacle to a transfer by the husband to the wife, in good faith, for the replacing of her money or property used or alienated by him. See Judice v. Neda, 8 An. 485, which interprets Lefebre v. Montilly, 1 An. 42.

The plaintiffs in this case attacked the *dation en paiement* on two grounds: 1: that the judgment and transfer under it were simulated, fraudulent, and void: 2: that the claims of the wife, if she ever had any, were paid and satisfied by the two judgments obtained in 1856, and 1869.

Two essentials are requisite for the validity of a *dation en paiement* by the husband to the wife: 1: That the husband should be really indebted to her: 2: That the fair value of the property given in payment should not exceed the amount actually due to her. It was the business of plaintiffs attacking the contract, to have charged, distinctly, the causes for which they demanded its nullity; and as there is no allegation, and no evidence tending to show, that the property transferred was worth or could have been sold for more than the amount at which

it was taken and received by the wife, it must be assumed that the valuation in the contract was fair.

The failure of the wife to enforce the judgment of 1856, did not pay or satisfy her claims against her husband: It simply made that judgment void; and left the parties in community, with the actual claims of the wife still existing. The judgment of 1869 did not dissolve the community, because it was not executed, but was, in fact abandoned. The community still existed; and the husband was still the debtor of the wife.

The husband had means, perhaps sufficient to have paid the wife in full, at the time the executions were issued in 1856, and 1869; but if his other creditors chose to relieve him of his pressing embarrassments by indulgence and by granting him terms, it would be a cruel law that would compel his wife, under pain of the forfeiture of her claims and rights, to proceed with her execution to sell him out, and thus deprive him of the means of pursuing his business.

The plaintiffs alleged the payment and satisfaction of the wife's claims; and they took upon themselves the burden of establishing this by proof. They have failed to offer any proof of payment; and the inquiry is, therefore, narrowed down to the question of the reality of the wife's claims.

The testimony taken on the trial shows a larger amount of indebtedness than that claimed in the suit of the wife in 1869. The witness testified with respect to the amount originally received by the husband; but the wife in her petition of December 11, 1874, admitted payment by her husband of $4467 69, on account of the original debt of $12,000, reducing that debt to $7532 30; and, in addition to this she claimed $900, for her half of property sold in January, 1867, received by him. In her suit in 1869, she stated that this amount was $800; and she fixed it at that in her affidavit of December 8, 1874. There is in the record proof that he received, and gave his receipt as tutor, for the proceeds of that sale, paid to him by the sheriff, $600, cash, and two notes of McVea and Kernan for $600 each, at one and two years. It is safe to assume that the statement that he received $800, on account of his wife's half, is not exaggerated; but it is not necessary for the purposes of this case to fix the exact amount. It suffices to show the actual indebtedness of the husband in an amount equal to the value of the property given to her in payment; and that was shown by the proofs in this case, and also in 1856, and 1869.

The value of the property, as accepted by Mrs. Levy, and credited on her judgment, was $6440: or $360 less than the amount due her, fixing it at $6800.

The *dation en paiement* did no more injury to the creditors than

would have been done by the sale of the property by the sheriff. The only difference would have been that the property would probably have sold for less than the $6440; and the additional costs and expenses would have diminished the proceeds to be applied to her debt. There could be no good reason why the husband might not validly do, by voluntary contract, that which the law would have compelled him to do by judgment and execution. The claims of the wife had privilege and priority over the debt of plaintiffs; and, though the conduct of Levy would authorize and require the closest scrutiny of his dealing with his wife, the rights of her succession and heirs should not be prejudiced by his frauds actual or intended.

The judgment appealed from is therefore affirmed with costs.