Koenig vs. Huck.

## No. 13,218.

JULES C. KOENIG vs. JOSEPH T. HUCK. IN RE JOSEPH T. HUCK, APPLYING FOR CERTIORARI OR WRIT OF REVIEW TO THE COURT OF APPEALS, PARISH OF ORLEANS, STATE OF LOUISIANA.

### SYLLABUS.

An attachment having been obtained on the sole ground that the defendant had caused a reputed act of mortgage in favor of his wife to be recorded against his property with intent to defraud his creditors, and an averment to that effect in the plaintiff's petition having been withdrawn on proof of its validity being offered, the same must, as a necessity, be dissolved.

In such a case the question of motive has no relation to the issues.

*B. B. Howard* for Huck, Petitioner.

*Bernard McCloskey* for Koenig, Respondent.

Submitted on briefs June 7th, 1899.
Opinion handed down June 19th, 1899.
Rehearing refused June 30th, 1899.

The opinion of the court was delivered by

WATKINS, J.   As stated in the opinions of the judges of the respondent's court, the only question for consideration and decision is the validity vel non of the plaintiff's attachment; we will therefore make a brief synopsis of the plaintiff's petition.

Suit is brought for the recovery of the sum of $1634.89, divided into several instalments represented by five promissory notes which were executed by the defendant; and the sum of $589.08 on open account, less certain credits.

The allegation upon which he demanded an attachment is as follows, viz:

"Now your petitioner further shows that said defendant has caused " his wife, Caroline Fisher, widow by first marriage of Michael Weit- " ner, and wife by second marriage of Joseph T. Huck, to be recorded " in the mortgage office of the parish of Orleans, under date of March " 19th, 1897, * * * claiming $5,707.22. That said · recordation " is the result of a combination between said Huck and his wife, for the " purpose of defrauding his creditors; that said Huck and his wife have " claimed that said recordation has been made for the purpose of de- " feating certain claims intended to be urged against said Huck and " for the purpose of defeating the claim of your petitioner herein.

"Petitioner now charges that said defendant has mortgaged, as- " signed and disposed of, or is about to mortgage, assign, or dispose " of his property, rights and credits or some part thereof, with intent " to defraud his creditors or give an unfair preference to some of " them; (and) that a writ of attachment is necessary in the prem- " ises.

The prayer is in conformity with the foregoing averments of the petition.

On the trial, there was judgment rendered in favor of the plaintiff for the full amount of the debt demanded, sustaining the attachment, and the defendant appealed to the court of the respondents.

Upon consideration of the cause in said court—same being composed of two judges, as it was organized under the constitution of 1879—there was a difference of opinion between them as to what

was a proper disposition to be made of the case, and they thereupon selected a lawyer of learning and ability to act as judge *ad hoc,* and according to law.

In the allotment of causes this one was assigned to the judge *ad hoc* for examination and report; and upon examination he reported an opinion which favored an amendment of the judgment appealed from by "striking out that portion which sustains the validity of the writ " of attachment, etc."—one of the judges concurring and the other dissenting.

In this situation, an application for a rehearing was filed, and the judgment was suspended for a time; and, in the meantime, an additional judge was elected under the provisions of the constitution of 1898, and he displaced the judge *ad hoc,* and, in this way, the *personnel* of the court was changed.

The cause on application for rehearing having been assigned to the aforesaid judge, he reported an opinion and decree avoiding the judgment previously rendered, and affirming the judgment appealed from.

In that opinion, one of the judges concurred, and therefrom another dissented—the judge concurring presenting his views in a separate opinion.

In our view the labor of the preparation of an opinion can be abbreviated and the questions of law be more understandingly stated by making extracts from said opinions, than by giving an extended statement of our own.

The following is a portion of the opinion that was reported by the judge *ad hoc,* beginning with a statement of the facts, viz:

"In March, Koenig sent for Huck, and asked him to settle this " account, and to give him a mortgage to secure the same.  At an in- " terview held on the 17th of March, the defendant said he would try " to raise a thousand dollars or thereabouts, and bring it to the plain- " tiff.  He came back on Friday, the 19th of March, and told the " plaintiff that he could not get the money.  On the same day his wife " appeared before a notary, made affidavit of her paraphernal claim, " and it was recorded in the mortgage office.  On the following day, " Saturday, the 20th, the plaintiff saw notice of this mortgage in the " Court Reporter.  He called upon the defendant, who stated that the " mortgage had been put of record because he was threatened with a " damage suit by a person who had been bitten by one of his dogs.

"The defendant made the same statement to two other persons, one

" the collector of I. L. Lyons, and the other, Hodgins, the collector of
" Koenig.   To both Hodgins and Koenig the defendant stated that
" he was not trying to defraud his creditors, that he would pay dollar
" for dollar, but that they would have to give him a little time on ac-
" count of bad business, and because. they were all coming at once;
" but he wanted to pay his debts.

"It appears that the defendant had been sued, in 1895, for a thou-
" sand dollars damages by one T. F. Schoenstein, who had been bitten
" by defendant's dog.   This case came up for trial about this time and
" was dismissed because of the absence of the plaintiff; and the plain-
" tiff threatened the defendant to renew the suit for ten thousand dol-
" lars damages.

"In the interval, between March 20 and March 26th, an attempt was
"made by the plaintiff, or his representatives to induce the defendant
" to give a mortgage to secure the claim of the plaintiff, and to induce
" the defendant's wife to surrender her claim so that settlement could
" be made between Huck and the plaintiff, or to get notes signed by
" her and her husband.

"It does not appear that the plaintiff instituted any investigation
" to determine whether the wife's claim was valid or invalid.   The
" question of the validity of this claim seems never to have been in
" issue or in discussion; and when the defendant offered to prove the
" verity of that claim in this cause, the plaintiff directed that all that
" portion of his petition, having reference to the invalidity of the claim
" of the wife, should be stricken out.

"On the 26th of March, the plaintiff sued out an attachment, mak-
" ing the allegations above set forth; and when he was on the stand,
" he testified as follows:

" 'Q.—As a matter of fact, you then swear that the only thing that
" made you bring this suit, was because his wife recorded her mar-
" ital lien and right against this property?

" 'A.—I brought this suit because I could not get any satisfaction
" out of Mr. Huck; because he owed me the money and would not
" make me a proposition in any shape.

" 'Q.—Did you believe that he was going to beat you out of your
money?

" 'A.—He would not make any arrangement.   We made various
" propositions to him, and he would not entertain them.

" 'Q.—You had no other reason?

" 'A.—No, sir.' "

"The only fact proven against the defendant is, that he caused his " wife to record her claim for her paraphernal funds, the motive for " this record being the desire to see his wife protected in case a judg- " ment should be rendered against him, for damages, in the dog suit. " There is no proof that he was *about t*o mortgage, assign or dispose " of his property, rights or credits, or some part thereof, to any person, " with any sort or kind of intent, fraudulent or otherwise.

"If this attachment can be maintained, it must be upon the bare " fact of his causing the record of his wife's claim for the purpose of " securing her in the event of a hostile judgment against him in the " dog suit.

"It is now firmly settled in Louisiana, that no transaction between " the husband and wife, whereby the husband seeks to transfer his " property to his wife in settlement of her paraphernal claims, is liable " to attack by a creditor, save for the purpose of questioning the " amount and verity of the wife's claim, and possibly of reducing the " amount of property transferred to her in satisfaction thereof. · The " insolvent husband, in this State, has the right to prefer his wife, and " such preference is not a fraud upon his creditors; nor does the " revocatory action lie to set aside any such transaction. Wilson, " Admin. vs. Chalaron, 26 Ann., 641; Levi vs. Morgan, 33rd Ann., " 536; Payne vs. Kemp, Ib. 818; Thompson & Co. vs. Freeman, 34th " Ann., 992; Lehman vs. Levy, 30 Ann., 745; Judice vs. Neda, 8 Ann., " 485.

"That being so, it is impossible to charge that such a transaction " was either a fraud upon the creditors, or an unlawful preference of " the wife, as a creditor, over the other creditors.

"In the case first above quoted, Wilson vs. Chalaron, the Supreme " Court held, that it was the duty of the husband to cause the registry " of the wife's mortgage to be made, and that such a registry by the " husband, coupled with a giving in payment to the wife of property, " in satisfaction of her paraphernal claims, was not a lawful ground " for an attachment. This duty of the husband to record his wife's " mortgage does not rest on any mere dictum of the Supreme Court, " but is enjoined by Article 3330 of the Civil Code. It is impossible " for me to distinguish between the Chalaron case and this. The mo- " tive with which a man does a lawful and proper act, is utterly im- " material. In other words, in the exercise, not only of a duty, but of

" a legal right, one is not responsible to third persons for his motive.
" There is a presumption *juris et de jure* in such cases that his motive
" partakes of the lawful character of the act done.

"The rule that a man must be presumed to have a motive appro-
" priate to his acts, works both ways, for good and for evil.  *Acta ex-*
" *teriora interiora secreta indicunt.*

"Generous and philanthropic motives can not avail one who acts il-
" legally.  Selfish and mercenary motives can not destroy his rights
" when his actions are legal.  Mayor of Bradford vs. Pickles, (1895),
" A. C. P., 599; Doyle vs. Insurance Company, 94 U. S., p. 541.

"Mortgaging, assigning or otherwise disposing of one's property
" with intent to defraud, or intent to give an unfair preference to one
" or more of one's creditors are grounds for attachment.  Creditors
" can be defrauded by a mortgage only where it is for a false and
" fictitious debt, or where the intent of the debtor is not to apply the
" amount raised by the mortgage from a *bona fide* lender to the lawful
" conduct of his business or the lawful payment of his just debts.
" Every preference given by an embarrassed debtor to one creditor
" (except his wife), over another creditor, is reprobated by our laws
" and jurisprudence, whether this preference is operated by a mort-
" gage, assignment or other disposition of property.

"*Fraud,* therefore, consists of two necessary elements, the *concilium*
" *fraudis,* and the *eventus damni*; that is, there must be a purpose to
" defraud, coupled with the doing of an act, the legal effect of which
" is to cause injury and damage.

"In this case the verity and amount of the wife's claim are unas-
" sailed.  It was the duty of the husband to record her claim.  He
" had the right to prefer it to the claim of the prospective damage
" suit, and in fact, to all other claims, and therefore the alleged motive
" with which he procured the mortgage to be recorded is, in my judg-
" ment, of no consequence, yet the *eventus damni* could not legally
" occur, and legally flow from that act.

"The plaintiff urges very earnestly that the conduct and state-
" ments of the defendant were such as to lead him to believe that the
" recorded wife's claim was purely fictitious, put on to cover the dog
" case, and that an attachment was justified, and therefore the de-
" fendant is estopped from contesting the attachment.  I can not find
" in the record any condition of fact, proven or suggested, to justify
" this position.  The defendant made no threats to mortgage, assign

"or dispose of his property to defeat the plaintiff's claim. On the "contrary, he at all times stated that he proposed to pay his debts, "principal, interest and costs. He told the plaintiff he would try to "raise a thousand dollars; came back and told him that he could not "raise it. He refused to give the plaintiff a mortgage, and thereby "give him a preference.

"He refused to settle with the plaintiff on terms other and different "from his other credits. He made no statements, express or implied, "that his wife's claim was fictitious.

"An analysis of the plaintiff's case constantly brings us back to "the naked fact that the defendant, in fear of a judgment in a damage "suit. caused his wife to register a mortgage to secure a true and "valid paraphernal claim, due to her, and frankly disclosed to his in-"quiring creditors the reason why he had taken this step. There is "no element of an estoppel in these facts. The defendant is not now "attempting to mend his hold, to shift his ground, or to aver and "maintain against Koenig a state of facts different from those which "were fully disclosed to him when he took out this attachment. I am, "therefore, of opinion that the judgment below, as regards the attach-"ment, must be set aside.

"It is therefore ordered, adjudged and decreed that the judgment "herein rendered, in the Civil District Court, be amended by striking "out that portion which maintains the validity of the writ of attach-"ment; and it is ordered, adjudged and decreed that the writ of at-"tachment, herein issued, be dissolved at the cost of the plaintiff.

"It is further ordered, adjudged and decreed, that the plaintiff do "pay the costs of this appeal, and that, except as is herein amended, "the judgment of the lower court be affirmed."

The paragraphs of the opinion that have particularly challenged our attention, are the following, viz:

(a) When the defendant offered to prove the verity of the claim of his wife which was secured by the mortgage in question, plaintiff's counsel at once directed that all portions of his petition having reference to the validity thereof, should be stricken out.

(b) That the plaintiff as a witness. made the admission that the registry of the mortgage of defendant's wife, was the only thing that caused him to sue out the writ of attachment.

(c) That the motive with which a man does a lawful and proper act, is immaterial.

(d)  That creditors can not be defeated by a mortgage when it is for false or fictitious debt, or when it is the intent of the debtor not to apply the amount raised by the mortgage to the lawful conduct of his business, or the lawful payment of his just debts.

(e)  That admitting the validity of the wife's mortgage claim, the creditor can not found an attachment upon alleged contrary statements by the debtor, the tendency of which is to impeach its verity and by this means superinduce such action.

(f)  That generous and philanthropic motives can not avail one who acts illegally; and selfish, and mercenary motives can not destroy his rights where his action is legal.

It is the last two propositions that the opinion and judgment presently under review assails, and upon the *converse* of which same are founded, as will be shown by the following extracts, viz:

"In our appreciation the real and *only* point at issue in the case
" is this:  Conceding, for the purpose of this case, the absolute verity
" of the wife's claim; concede that it is the *duty* of the husband to
" cause the registry of the wife's mortgage to be made and his *right*
" to prefer her to his other creditors, and that such preference is not a
" fraud upon his other creditors, and does not justify the attachment,
" is not the defendant *estopped* from contesting the attachment when
" his conduct and representations, after performing this *duty* and ex-
" ercising this *right,* are of a character to justify 'the ordinary man'
" in entertaining a reasonable belief that the claim of the wife is ficti-
" tious and was 'trumpted up' simply to defeat a real or pretended
" creditor, other, it may be, than the attaching creditor, who is not
" advised as to the verity of the wife's claim?  And is not the estop-
" pel good, even should it subsequently transpire that the wife's claim
" was *bona fide;* the registry of her rights made for no dishonest pur-
" pose whatever, and that the representations of the husband to his
" creditors concerning the wife's claim and which representations jus-
" tified the attachment were false?

"If the husband, after making a *donation* to his wife, or after re-
" cording her mortgage rights to secure his wife her legitimate claims
" against him, should say to his creditors that he owed his wife noth-
" ing, that her claim was a mere sham, and that the transaction be-
" tween them was merely intended as a cloak to deceive and to defeat
" the collection of a certain alleged claim which he protested he did not
" owe, even although he added that all his legitimate creditors would

" be paid, we do not doubt that it could be seriously questioned that
" the attachment would be justified, however false his representations,
" as to the invalidity of his wife's claim, might subsequently be shown
" to be.

"If instead of the debtor *saying* in so many words, that his wife's
" claim is a sham, his *conduct* and representations are such that it is·
" justly inferable that he wishes to convey the idea, and to impress
" the belief, *that it is not real;* and if upon that honest belief, so in-
" duced, his creditor attaches, the attachment would be equally justi-
" fiable.   Any other rule would simply be to put a premium on de-
" ception and double dealing, and to encourage, if not to suggest, to
" cunning and designing debtors the setting of pitfalls into which
" they would allure their unsuspecting creditors, and then, when their
" creditors have fallen into the trap and have acted on the course pro-
" voked by the debtor's conduct, to mulct them in damages."

The proposition of respondents is succinctly and forcibly presented,
and while to say the least, the argument is very persuasive, it can not
prevail over the opinion expressed by the judge *ad hoc.*

We have in the petition the distinct averment that the defendant
had mortgaged, assigned or disposed of, or was about to mortgage,
assign or dispose of his property or some part thereof "with intent to
" defraud his creditors, or give an unfair preference to some of
them."

We, have the fact established at the trial, that when proof was
offered to show the reality of the wife's mortgage claim against her
husband, the defendant, that part of his petition was withdrawn
altogether.

In our opinion, that was the end of the attachment, as the only ele-
ment of fraudulent purpose and intent there was in the case origin-
ally, at that instant, passed out of the case; and it was of no conse-
quence what the motive of the defendant was with reference to it.

In our judgment, the law of the case is correctly stated in the
opinion of the judge *ad hoc.*

It is therefore ordered and decreed that the judgment and decree
which are under review be and the same are hereby annulled and re-
versed; and it is further ordered and decreed that the opinion and
judgment theretofore pronounced by the judge *ad hoc* be reinstated
and enforced as the judgment and decree of the respondent's court.

And it is finally ordered and decreed that the cost of this proceeding·
be taxed against the plaintiff and appellee.