Statement -of the Case.
MONROE, J.
Plaintiff sues for damages resulting from the seizure and sale, under a judgment against her husband, of a stock of merchandise which the latter had transferred to her by dation en paiement in restitution of her paraphernalia. Defendants (plaintiffs in the seizure) answer that the dation en paiement set up by plaintiff is of no effect: (1) Because the judgment liquidating plaintiff’s claim against her husband is prescribed; (2) because there was no delivery of the property; (3) because the “sale” was made in contravention of Act No. 94, p. 137, of 1S96, in that the purchaser did not exact from the seller a sworn statement that the merchandise thus sold in block had been paid for.
It appears from the evidence that in 1882 plaintiff obtained and recorded a judgment against her husband decreeing a separation of property and awarding her ,$773.59, with interest, as the balance due her on a paraphernal claim; that on December 26, 1904, reluctantly, and in compliance with their demand, the husband gave defendants his 10 notes, aggregating $505.07, and payable montbIj', in liquidation of their claim against him for merchandise previously sold, and that two days later, being of opinion that the condition of his affairs required that his wife should be protected, he made to her a dation en paiement, in satisfaction of her claim, of the stock of goods contained in the store which up to that time had been conducted by him in the town of Opelousas; that plaintiff consulted counsel and was advised that the transaction in question could legally be made; that the property which was the subject thereof was actually delivered to her; that defendants were almost immediately informed of the change thus effected; and that during the 10 months that followed they sold to plaintiff, represented by her son or by a messenger boy, more than 80 bills of goods, for cash, giving receipts in the name of “A. B. Chachere, Agent,” it appearing that plaintiff employed her husband in that capacity. It further appears that in October, 1905, defendants obtained judgment against A. B. Chachere upon the notes which had been given by him, but with no recognition of vendor’s privilege on any goods sold by them, and thereafter made the seizure here complained of; that plaintiff, being unable to furnish bond, did not apply for an injunction, but. that she claimed the property seized as her own, and caused her protest against its seizure to be read at the sale; that a month or six weeks before the seizure the stock in the store had been inventoried by her and valued at $913.13; that the goods seized were appraised at $238.50, and were sold for $374.- *363 35; that the cost price of the goods so seized was $800 or more; and that included therein were goods of the value of $70 or $75 which plaintiff bad purchased from defendants for cash. It does not appear that the business conducted by plaintiff had been a profitable one, or that her credit was affected by the seizure; the testimony on the latter point being that she had never made any attempt to buy goods on credit. Upon the other hand, it is shown that the business, such as it was, was broken up, that plaintiff was much distressed thereby, and that she was obliged to employ counsel, whose services are shown to be worth from $100 to $200. It is conceded that A. B. Chachere was in debt for goods purchased by him to the extent of $1,400, and that other creditors than the defendants had obtained judgments against him; but it does not appear that any of them had asserted the vendor’s privilege upon the goods in question, and defendants were unable to say with certainty that there were included in the seizure any goods which had been sold by them on credit — their manager testifying that he thought there was one box of starch which might have been in that category, but declining to affirm it as a fact. After hearing the case, the judge a quo held that defendants’ pleas of prescription and want of delivery were not well founded, that Chachere was indebted to his wife in the amount alleged by her, and that the dation en paiement had been made and accepted in good faith, but that it was in contravention of Act No. 94, p. 137, of 1896; and he accordingly rendered judgment for defendants, from which plaintiff has appealed.
Opinion.
We agree with our learned brother of the district court that the claim of the wife against the husband for the restitution of her paraphernalia is imprescriptible during the marriage, whether reduced to judgment or not. Merrick’s Rev. Civ. Code, art. 3523; Sewell v. McVay, 30 La. Ann. 673; Lehman, Abraham & Co. v. Levy, 30 La. Ann. 749; Succession of Vollmer, 40 La. Ann. 594, 4 South. 254. We also agree with him that there had been an actual delivery to the wife, in payment of the debt due her by the 'husband, of the goods subsequently seized by defendants, and that both husband and wife acted in good faith. To determine whether the dation en paiement in question was stricken with nullity by reason of the noncompliance of the parties with the provisions of Act No. 94, p. 137, of 1896, it becomes necessary to inquire whether that statute was intended to apply to such transactions. Article 19S4, Merrick’s Rev. Civ. Code, provides that:
“Every contract shall be deemed to have been made in fraud of creditors, when the obligee knew that the obligor was in insolvent circumstances and when such contract gives to the obligee, if he be a creditor, an advantage over other creditors of the obligor.”
But articles 2425 and 2446 provide that the wife may obtain a separation of property from her husband whenever “the disorder of his affairs induces her to believe that his estate may not be sufficient to meet her right and claims,” and authorizes the husband to transfer property to his wife in payment of her claim against him, or to replace her dotal or other effects alienated, whether they be separated in property or not; and it is the settled jurisprudence of this state, not only that these provisions take the dation en paiement, made by a husband in insolvent circumstances in payment of the claims of his wife, out of the rule as laid down in article 1984 (supra), but that it is the obligation and duty of the husband to see that the wife is protected, and, the greater the danger that his estate will be absorbed by other creditors, the greater the obligation on his part to see that she is paid, by preference over such creditors, the amount due her. Judice v. *365 Neda, 8 La. Ann. 484; Lehman, Abraham & Co. v. Levy, 30 La. Ann. 750; Levi, Executrix, v. Morgan, 33 La. Ann. 532; Payne v. Kemp et al., 33 La. Ann. 818; Thompson & Co. v. Freeman et al., 34 La. Ann. 992; Hewitt v. Williams, 47 La. Ann. 742, 17 South. 269; Koenig v. Huck, 51 La. Ann. 1372, 26 South. 543. This being the case, we are unable to discover any sufficient reason why the dation en paiement so made is not taken out of the rule established by Act No. 94, p. 137, of 1896. In each case we have a rule in support of the doctrine of the civil law that the property of the debtor is the common pledge of his creditors, as against which we have special provisions which place the wife, as a creditor of her husband, upon a different footing iron} other creditors; and if these provisions make her case an exception to the one rule, a fortiori, as we think, do they make it an exception to the other, for the reasons which will be stated, to wit:
There can be no doubt that, in the absence of other legislation, the language, “Every •contract, * * * when such contract gives to the obligee, if he be a creditor, an advantage,” etc., as contained in article 1984, would apply to a dation en paiement from a husband to his wife; but it is not so clear that the language of the act of 1896 would apply to such a contract, even though there were no other legislation. The act is described by its title as—
•“An act to amend and re-enact Act 166 of 1894, * * * entitled ‘An act to define and punish certain misdemeanors in trade and commerce,’ and to define the crime of purchasing-goods, wares and merchandise, under an assumed name, with intent to cheat or defraud the vendor or seller; also to make it a crime for any one to purchase goods * * * on credit and sell, hypothecate or dispose of same out of the usual course of business, with intent * * * ; and also to make it a crime for any one to purchase goods * * * on credit, and then to abscond from the state or secrete himself, with intent * * * ; and also to make it a crime for any one, willfully and knowingly, to purchase, in blocks, goods * * * unpaid for, from any one without exacting from the seller a written affidavit that said goods * * * have been paid for; and making the failure to exact such affidavit and the failure of the seller to pay over the whole of said purchase price to his creditors, in proportion to the amount of their respective claims, evidence of fraudulent intent within the meaning of this act, and to fix the punishment of said offense.”
The first section of the act imposes a penalty of fine and imprisonment upon him who purchases goods, etc., under an assumed name, with intent to defraud the seller. Section 2 imposes a like penalty for purchasing goods, etc., on credit, and hypothecating, pledging, or otherwise disposing of them with intent, etc. Section 3 imposes a like penalty on the purchaser on credit, who shall secrete himself, or abscond, with intent, etc. It will be observed that these provisions do not refer to the vendee to whom the original purchaser may sell the goods. The defendants now before the court, therefore, rely upon section 4 of the act, which imposes a penalty of fine and imprisonment upon any one who “shall, willfully and knowingly, purchase, in blocks, goods * * * unpaid for by the seller, without exacting from said seller a written statement, sworn to, showing that said goods * * * have been paid for.” By its terms this section of the act applies exclusively to the purchase (or sale) of goods; the acquisition or disposition of them by dation en paiement not being mentioned. It is said, however, that a giving in payment is a sale within the meaning of the law, and it may be that, for general purposes, this is true; but the question to be here determined is whether it is true for the purposes of this case. Is it conceivable that the General Assembly of Louisiana intended that a law making it a misdemeanor, punishable by fine and imprisonment, to purchase goods without requiring an affidavit from the seller that they have been paid for, should include and apply to the case of a wife receiving property irom her *367 husband by dation en paiement in restitution of her paraphernalia? AVe think not. To the contrary, we imagine that the members of the Legislature of 1896 would be shocked to learn that, under the statute as enacted by them, a wife had Been fined $1,000 and sent to prison for 12 months for participating in such a transaction. And well they might be, for, unless some further and radical change be made in the law applicable to married women, no such sentence could be imposed. As was said by this court in one of the cases heretofore cited:
“But the wife, in legal contemplation, and as the truth is usually, is but the (instrument in the hands of her husband when she is a party to his fraudulent devices; and her actual rights cannot be prejudiced by conduct which, in a person sui juris, could not be characterized otherwise than as fraudulent and void as to 'creditors.” Lehman & Abraham v. Levy, 30 La. Ann. 749-750.
Beyond this, the evident purpose of the act of 1896 “was to check or suppress the practice of doing away with goods bought on credit in fraud of the vendor’s claim for the unpaid price.” State v. Ackerman, 51 La. Ann. 1213, 26 South. 80. It was not the purpose to prevent the purchaser from making any lawful disposition of his property, whether bought on credit or for cash. 1-Ie may, therefore, lawfully surrender to his creditors in general all the property that he has, and, unless the vendor of particular goods has preserved his privilege for the price, the proceeds of such goods will be distributed among the creditors in general. And whatever he can surrender to his creditors in general he can give in payment to his wife, whom the law prefers to all other creditors, from which it follows that, though the property so given be not paid for, the wife may acquire a perfect title thereto, unless the title be incumbered with the privilege of the vendor for the price. In the instant case it is shown that the defendants had no privilege upon any of the property which passed from Ohachere to his wife, since they had obtained judgment for the full amount of their claim without, as we understand, asking or obtaining the recognition of such privilege, and had thereby abandoned their privilege, even if they had been able to identify any of the goods sold by them on credit, which, we think, was not the case; and there is nothing in the record to indicate that any other creditor of Ohachere is, or was, in any better position. AVe therefore conclude that the seizure and sale here attacked were unauthorized and illegal, and that defendants are liqble for the damages occasioned thereby. Those damages we find to be the value of the goods taken by defendants, $800, and the amount necessary to compensate the distress and annoyance to which plaintiff was subjected, $200. Plaintiff is not entitled to recover on account of loss of the business or of the profits of the business, for she has testified that the business had paid no profit. Nor is she entitled to recover for injury to her credit, as she is not shown to have had any. Nor is she entitled, in a case of this kind to recover for counsel fees. Chapuis v. Waterman, 34 La. Ann. 61; Roos v. Goldman & Bro., 36 La. Ann. 132; Fox & Co. v. Jones, 39 La. Ann. 929, 3 South. 95.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of the plaintiff, Josephine M. Compton, wife of Alex B. Ohachere, and against the defendants, Dietlein & Jacobs, and Fritz Dietlein and Adolph Jacobs, members of said firm, in solido, in the sum of $1,000, together with costs in both courts.
BREAUX, C. J., takes no part.