State vs. Ackerman.

---

## No. 13,135.

### STATE OF LOUISIANA VS. CARL ACKERMAN.

#### SYLLABUS.

1. Act No. 94 of 1896 does not embrace more than one object, within the meaning of Article 29 of the Constitution of 1879.
2. An information will not be held insufficient for omitting to state the time at which the offence was committed, or for stating a time impossible, when time is not of the essence of the offence; nor, in such case, for omitting to state the time of the doing of an antecedent act, upon which the offence is made to depend; nor, for omitting to state the place of the doing of such antecedent act, where proof as to the place is unnecessary.

ON APPEAL from the Fifth Judicial District Court for the Parish of Ouachita. *Potts, J.*

*M. J. Cunningham,* Attorney General, and *J. P. Madison,* District Attorney, for Plaintiff and Appellee.

*Stubbs & Russell,* for Defendant and Appellant.

Argued and submitted April 22nd, 1899.
Opinion handed down May 15th, 1899.

The opinion of the court was delivered by

MONROE, J. Defendant having been prosecuted under Act No. 94 of 1896, was convicted, and sentenced by the district judge, without a jury, agreeably to the provisions of Article 110 of the Constitution, and he has appealed, and asks that the judgment against him be reversed, on the following grounds, which were presented to the court *a qua* in motions to quash, and in arrest of judgment, respectively, to-wit:

1st. That the charge against him is too vague and indefinite; that the offence is charged as having been committed on the — day of December, 1898, and is, therefore, so indefinite as to render it impossible for him to plead thereto.

2. That the information is defective, in that the time and place at which the purchases were made, are not set forth, and, therefore, the court is without jurisdiction.

3. That no offence is legally charged against him.

4. That the statute under which the charges are brought is in conflict with Article 29 of the Constitution of 1879, in that it embraces more than one object.

The information reads as follows, to-wit:

"J. P. Madison, District Attorney of the Fifth Judicial District "of the State of Louisiana, who prosecute in this behalf, in the name "and by the authority of the State of Louisiana, comes in person, "into the Fifth Judicial District Court, in and for the parish of "Ouachita, State of Louisiana, and, with leave of the court had and "obtained, on the 23rd day of the month of February, *Anno Domini,* "eighteen hundred and ninety-nine, gives the court herein to under- "stand and be informed, that Carl Ackerman, late of the parish

" aforesaid, in the Fifth Judicial District of the State of Louisiana,
" on or about the — day of the month of December, in the year of
" our Lord, one thousand eight hundred and ninety-eight, in the
" parish, district and State aforesaid, did then and there, wilfully
" and feloniously sell, hypothecate, pledge, and otherwise dispose of,
" out of the usual course of business, and with the intent to cheat and
" defraud his vendor and seller, 17 2-3 dozen pairs of pants, of the
" value of one hundred and sixty-one and 50-100 dollars, said pants
" having been bought by said Ackerman on a credit, from B. J. Wolff
" & Sons, of New Orleans, La.   Contrary to the form the statute of
" the State of Louisiana in such case made and provided, in con-
" tempt of the authority of the State of Louisiana, and against the
" peace and dignity of the same.

   "And the said Madison, in his capacity aroresaid, further presents
" that the said Ackerman did then and there, wilfully secrete himself
" and abscond from the State of Louisiana, with the wilful intent of
" cheating and defrauding his said vendors, B. J. Wolff & Sons, con-
" trary to the form of the statute of the State of Louisiana in such
" case made and provided, in contempt of the authority of the State of
" Louisiana, and against the peace and dignity of the same."

   The defendant was found guilty and sentenced upon the first count,
and, with respect to the second count, the motion in arrest of judg-
ment was sustained.

   The title and text of Act No. 94 of 1896, read as follows, to-wit: .

   "An act to amend and re-enact Act 166 of 1894, approved July 13,
" 1894, entitled, 'An act to define and punish certain misdemeanors in
" trade and commerce, and to define the crime of purchasing goods,
" wares or merchandise, under an assumed name, with intent to cheat
" or defraud the vendor or seller; also, to make it a crime for anyone
" to purchase goods, wares, or merchandise, on credit, and sell, hy-
" pothecate or dispose of the same, out of the usual course of business,
" with the intent to cheat or defraud the vendor or seller; and, also,
" to make it a crime for anyone to purchase goods, wares, or merchan-
" dise on credit and then to abscond from the State or secrete himself,
" with the intent of cheating or defrauding, the vendor or seller; and,
" also, to make it a crime for anyone, wilfully and knowingly to pur-
" chase, in block, goods, wares, or merchandise, unpaid for, from
" anyone without exacting from the seller a written affidavit that said
" goods, wares, or merchandise has been paid for; and making the

" failure to exact such affidavit, and the failure of the seller to pay
" over the whole of such purchase price to his creditors, in proportion
" to the amount of their respective claims, evidence of the fraudulent
" attempt, within the meaning of this act, and to fix the punishment
" of said offence.'

"Be it enacted by the General Assembly of the State of Louisiana,
" that Act No. 166, of the session of 1894, be amended and re-enacted
" so as to read as follows:

"Section 1. That whoever shall purchase goods, wares, or merchan-
" dise under an assumed or fictitious name, and with the intent to
" cheat or defraud the seller or vendor, shall be guilty of misde-
" meanor, and, on conviction thereof, shall suffer fine in the discretion
" of the court, and be imprisoned not less than six, nor more than
" twelve months.

"Sec. 2. Be it further enacted, etc. That whoever shall purchase
" goods, wares, or merchandise on credit, and shall hypothecate,
" pledge, or otherwise dispose of same, out of the usual course of
" business, and with the intent to cheat or defraud the seller or
" vendor, shall be guilty of a misdemeanor, and, on conviction thereof,
" shall suffer fine in the discretion of the court and imprisonment, not
" less than six nor more than twelve months.

"Sec. 3. Be it further enacted, etc. That whosoever shall pur-
" chase goods, wares, or merchandise on credit, and shall secrete him-
" self or abscond from the State for the purpose, and with the intent
" of defrauding the seller or vendor, shall be decreed guilty of a mis-
" demeanor and, on conviction thereof, shall suffer fine in the discre-
" tion of the court and imprisonment for not less than six nor more
" than twelve months.'

"Sec. 4. Be it further enacted, etc. That whosoever shall wilfully
" and knowingly purchase in block, goods, wares, or merchandise, un-
" paid for by the seller, without exacting from said seller a written
" statement, sworn to, showing that said goods, wares, or merchandise
" have been paid for, shall be guilty of a misdemeanor, and, on con-
" viction, shall be fined an amount in the discretion of the court, and
" suffer imprisonment for not less than six nor more than twelve
" months.

"Sec. 5. Be it further enacted, etc. That the failure of the
" vendor, under Sections 1, 2, and 3, to pay over to his vendor or
" vendors, the price of such goods, wares, or merchandise, in porpor-

" tion to their claims, or to return the same; and the failure of the
" purchaser, under Section 4, to exact a signed or sworn statement
" from the seller required in said section, shall be such *prima facie*
" evidence of fraudulent intent within the meaning of this act, as to
" warrant both criminal and civil proceedings.".

## I.

As to the failure to set forth the time at which the offence is said
to have been committed.

It is well settled that, unless time is of the essence of the offence,
the proof need not correspond with the charge.   Nevertheless, the
general rule is, that:

"The day and year of the offence should be stated, except in those
" states whose statutes have made the allegation of time unneces-
" sary, or permitted it to be less specific."  Bishop's New Crim. Pr.,
Vol. 1, §386-7.

Louisiana is within the exception.   Section 1063, Revised Statutes,.
reads:

"No indictment for any offence shall be held insufficient   *   *   *·
" for omitting to state the time at which the offence was committed,·
" in any case, where time is not of the essence of the offence, nor for
" stating the time imperfectly, nor for stating the offence to have been
" committed on a day subsequent to the finding of the indictment, or·
" on an impossible day, or on a day that never happened," etc.

## II.

As to the failure to set forth the time and place at which the·
purchase was made.

The most that can be claimed as to the purchase is, that the offence·
under the second section of the statute, consists in disposing of
goods, bought on credit, and hence, that it is necessary to charge·
that the goods sold or hypothecated, etc., with intent, etc., were·
bought on credit.   But it is clear that no greater exactness as to time·
is required with respect to the purchase than with respect to the sale·
or other disposition.

As to the place of purchase, it would be immaterial, as a matter of·

proof, and is so made, by statute, as a matter of averment. Revised Statutes 1062, reads:

"It shall not be necessary to state any venue in the body of any in-" dictment, but the State, parish, or other jurisdiction named in the " margin thereof, shall be taken as the venue for all the facts stated " in the body of such indictment, etc.

"Sec. 1063. No indictment for any offence shall be held insuffi-" cient for want of the averment of any matter unnecessary to be " proved   *   *   *   nor for want of a proper or perfect venue."

### III.

As to the suggestion that no offence was legally charged.

The charge in the first count—upon which alone the defendant was sentenced—follows the language of the statute and is sufficient.

### IV.

It is said that the act, under which the State prosecutes, embraces more than one object, and is, therefore, repugnant to Article 29 of the Constitution of 1879, which reads as follows, to-wit:

"Art. 29. Every law enacted by the General Assembly shall embrace but one object and that shall be expressed in the title."

No complaint is made that the title fails to express the object or objects of the act, the objection being confined to the proposition that the act embraces more than one object.

The purpose in the adoption of constitutional provisions, such as the one here relied on, was very clearly stated by Chief Justice Eustis in Walker vs. Caldwell, 4th Ann., 298, and his exposition of the matter was subsequently adopted by Chief Justice Slidell, in Succession of Lanzetti, 9th Ann., 329, as it has also been adopted by Sedgwick, in his work on The Construction of Statutory and Constitutional Law. (Pomeroy's Edition, p. 519.)

In the case last above mentioned, the question was, whether "An act to provide a homestead for the widow and children of deceased persons," which provided for the payment of a thousand dollars in money, was not repugnant to Articles 118 of the Constitution of 1845, and 115 of the Constitution of 1852, (which articles were practically

the same as that now under consideration). Chief Justice Slidell said, concerning the attack upon the constitutionality of the act:

"We think the argument invokes an interpretation of the constitu-
" tional clause, too rigorous and technical. If, in applying it, we
" should follow the rules of a nice and fastidious verbal criticism, we
" should often frustrate the action of the legislature without fulfill-
" ing the intention of the framers of the Constitution. That inten-
" tion has been repeatedly the subject of judicial comment. It was
" mainly to prevent that loose legislation which disgraced our statute
" books. As was remarked by the court in Walker vs. Caldwell, 4th
" Ann., 298: 'The title of an act often afforded no clew to its con-
" tents. Important general provisions were found placed in acts, pri-
" vate or local in their operations; provisions concerning matters of
" practice or judicial proceedings were sometimes in the same
" statute with matters entirely foreign to them; the result of which
" was that, on many important subjects, the statute law had become
" almost unintelligible, as they whose duty it has been to examine,
" or act under it, can well testify. To prevent any further accumula-
" tion to this chaotic mass, was the object of the constitutional pro-
" vision under consideration." In carrying out this intention, as we
" are bound to do, our inquiry shold be, whether, in the particular
" case, there has been a substantial compliance, by the legislature,
" with the command of the Constitution, according to its fair and
" reasonable intendment."

The conclusion reached was that the act was constitutional.

In Lafon vs. Labrocq, 9th Ann., 350, it was held that an act en-
titled "An act to amend the several acts relative to the police and
government of the town of Baton Rouge," was not repugnant to
Article 118 of the Constitution of 1845, though it contained provi-
sions conferring legislative and judicial powers, and the plaintiff was
arrested and fined for violation of an ordinance adopted and enforced
under its authority.

In State vs. Henry, 15 Ann., 297, it was held that an act entitled
"An act relative to slaves," was not repugnant to Article 115 of the
Constitution of 1852, although the act treated of crimes committed by
slaves, and prescribed penalties; declared the duties of the Justice
of the Peace and District Attorneys in relation to the same; regulated
the trial and punishment; provided for the compensation of the
owner, when the slave was executed; treated of runaways; declared

who might be witnesses in certain cases, and provided for their compulsory attendance. The court, through Chief Justice Merrick, in deciding the question, and in referring to the classification mentioned, said:

"This classification of the various provisions of the act shows that by analysis and subdivision, we may discover more than one object in the act, if we attend to each separate provision of the same instead of its general scope. No act could be passed on any subject, however simple, if it contained more than one single provision, which might not be obnoxious to the same charge. And to give this interpretation to the Constitution, would require as many distinct acts of the Legislature as there are paragraphs and provisions in any one act.

"Suppose the statute had been subdivided, and the first sixteen sec-
" tions had been grouped under a statute entitled: 'An act relative
" to crimes committed by slaves.' It could then have been objected
" with equal propriety that the statute embraced more than one object
" because it embraced the crimes of murder, poisoning, arson, bur-
" glary, etc.

"If a statute were passed upon any one of these heads, in any man-
" ner recognizing any distinctions or grades in the offence, that
" again would be obnoxious to the same objection. It is thus seen
" that it could not have been the intention of the framers of the
" Constitution to restrict the Legislature to a single provision on each
" object of legislation.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"If duties are imposed by the act upon Justices of the Peace, the
" Sheriff, or the District Attorney, it is only with relation to slaves.
" In like manner every other section of the statute has a distinct re-
" lation to the object specified in the title of the act. Then, when we
" look to the body of the act, to see whether it contains more than
" one object, we must observe its general scope, and not the subdi-
" visions introduced by the statute itself. Testing the present act
" by this rule does not enable us to say that it violates the Constitu-
" tion, in the particulars complained of."

This reasoning is familiar, as applied to the well established rule of criminal procedure which is thus stated by Mr. Bishop, to-wit:

"Sec. 417. 2. Crimes Within Crimes.—Under many circumstances,
" a charge of one crime includes within itself and constitutes also a

" charge of others. If, for example, it is murder, the indictment, " drawn in due form, contains an accusation of a simple assault, a " simple battery, an aggravated assault, manslaughter, and sometimes " other offences, as parts of the murder, etc. Though here, a single " allegation constitutes, in the aspect thus stated, a charge of one or " more crimes, yet, as the law of pleading looks at it, there is but one " crime, however many minor ones thus appear."

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Sec. 488. Many acts, if together they constitute one offence, may " be laid in one count, thus

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"3. Assault, Battery, and False Imprisonment may be charged in " one count, because, 'though,' said Potts, J., "in themselves, separately " considered, they are distinct offences, yet collectively they constitute " but one offence.' " Bishop's New Crim. Pr.

In the work of Mr. Sedgwick on The Construction of Statutory and Constitutional Law, (Pomeroy's Ed., 1875), the editor has collected a large number of authorities which support the general proposition that—"When all the provisions of a statute fairly relate to the same " subject; have a natural connection with it; are the incidents or the " means of accomplishing it, then the subject is single, and if it is " sufficiently expressed in the title, the statute is valid."

And, *inter alia,* the following:

"The charter of a railroad company may contain provisions for " municipal subscriptions in aid of it. *Supervisors vs. People,* 25th " Ill., 181. \* \* \* In an act chartering a college, a provision for- " bidding the sale of liquors within four miles thereof was held ger- " mane to the subject and valid." *O'Leary* vs. *The County of Cook.* 28th Ill., 534.

"A clause in a bank charter allowing all parties on any bill ne- " gotiated in a bank to be sued in one action is also germane to the " subject and valid." Davis vs. Bank of Fulton, 31 Ga., 69. "An " act to suppress murder, lynching, assaults and batteries," deals with but one subject, though in different grades. *Gunter vs. Dale Co.,* 44 Ala., 639; see also *State vs. Bowers,* 14th Ind., 195; *Farley vs. Dowe.* 45 Ala., 324.

"An act to simplify and abridge the rules, practice, pleadings and " forms in civil cases, in the courts of this State, to abolish distinct " forms of action at law, and to provide for the administration of

"justice in a uniform mode of pleading and practice, without dis-
"tinction between law and equity; held, that a provision giving me-
"chanics a lien is germane to the subject expressed in this title."
*Hall vs. Bunte,* 20th Ind., 304.

In this State; in *State vs. Taylor,* 34th Ann., 978, the question
presented was, whether Act No. 8, of the extra session of 1870, was re-
pugnant to Article 114 of the Constitution of 1868. The title reads:
"An act relative to crimes and offences." The body of the act de-
nounced a number of crimes of different kinds—such as mutilating
indictments, severing produce from the soil or gates from houses;
killing or wounding hogs or sheep; selling produce by short weight;.
conspiring to .commit murder, rape, robbery, burglary, arson, perjury,
etc. It is true that Article 114 of the Constitution of 1868, merely
provided that every law should express its objects in its title. The
language used in disposing of the case, however, indicates the im-
pression as to the unity of the purpose of the statute. Mr. Justice
McEnery, as the organ of this court, said:

"As indicated in the title, the object of the Legislature was to
"provide for certain crimes and offences and that object is carried out
"in the body of the Act. * * * The act treats of no other subject
"than crimes and offences, and that is covered by the title."

In *State vs. Crowley,* 33rd Ann., 782, it was claimed that Act 98 of
1880, (providing for the organization of the Criminal District Court)
was in violation of Article 29 of the Constitution of 1879, and it was
held that the provisions for the appointment of jury commissioners,.
for the drawing and empannelling of jurors, for said court, for the
division of the court, into sections, and for everything else necessary
to its full and complete organization and for the regulation of the
proceedings therein, were all germane to the subject.

In *State vs. Dubois,* 39th Ann., 676, *State vs. Breeden,* 47th
Ann., 374, the decision in *State vs. Taylor,* 34th Ann., 978, was
affirmed, though it is proper to say that in both cases the constitution-
ality of the act seems to have been tested, as it was in the Taylor
case, by Article 114 of the Constitution of 1868, and not by Article
29 of the Constitution of 1879.

In the cases to which we have been referred by the learned counsel
for the defendant, either there were other questions involved, than the
one which we are here considering, or else it was found, in particular
cases, that there were embraced, in the statutes attacked, more objects

than one, without a common purpose to weld them together and make them in the purview of the Constitutions, means to the same end, rather than distinct and independent subjects of legislation.

Thus, in *Walker vs. Caldwell*, there was involved the question of the amendment of a law, by reference to its title; in *State vs. Henderson*, 32d Ann., 780, the constitutionality of the statute was upheld; in *Klein vs. Treasurer*, 42 Ann., 176, there were four distinct appropriations for totally different objects in violation of Article 52 of the Constitution of 1879; in *State ex rel. Lewis vs. Judge*, 44th Ann., 90, the title and context of the act indicated that its purpose was to punish a violation of *labor* contracts; whereas one of the sections undertook to make offences of violations of contracts not connected with labor; in *State vs. Heywood*, 38th Ann., 689, the court found that four separate crimes were denounced, that there was no common object to be accomplished, and that the title failed to express the different objects aimed at.

In the instant case, considering the title and text of Act 94 of 1896, we are of opinion that it fairly appears that the law makers had but one object in view, which was to check or suppress the practice of doing away with goods bought on credit, in fraud of the vendor's claim for the unpaid purchase price; and the penalties denounced, and other provisions of the act, are to be regarded as the means to the attainment of that object. If in the application of the act, it should produce the injustice or inconvenience which is suggested, as a possibility, the legislature will, no doubt, repeal or amend it.

We find no error in the judgment appealed from, and it is therefore affirmed.