CHARITY HOSPITAL OF LOUISIANA v. AXFORD ET AL.

(January 13, 1930. Opinion and Decree.)
(February 17, 1930. Rehearing Refused.)

Emmet Alpha, of New Orleans, attorney for plaintiff, appellee.

Henry & Cooper and A. M. Suthon, of New Orleans, attorneys for defendants, appellants.

JANVIER, J. Plaintiff seeks a solidary judgment against the three defendants in the sum of $250, alleging that to be the value of hospital, surgical and radiographical services rendered defendant, Axford, when he was injured while in the employ of defendant, Mrs. George Thoele.

The proceeding is brought under Act 126 of 1924, as amended by Act 29 of 1928.

In accordance with the provisions of the statute, the injured party, the employer, and the employers' liability insurance company are made parties defendant.

The defense was at first threefold: First, that there is no such corporation as "Charity Hospital of Louisiana," which is the name under which plaintiff sues. Second, that the statute under which recovery is sought is violative of the provisions of section 16, article III, of the Constitution of 1921 in that it contains more than one object. Third, that there is not sufficient proof in the record that the services charged for were rendered, nor that the charges are reasonable and correct.

After the oral argument, defendant, through an exception of no cause of action filed in this court, set up a fourth defense based on the contention that the statutes to which we have referred, to-wit, Act 126 of 1924 and Act 29 of 1928, are violative of section 1 of the Fourteenth Amendment to the Constitution of the United States in that they make an arbitrary and unreasonable discrimination against employes, employers and insurers of employers, where the injuries were sustained under circumstances which bring the matter within the state compensation laws.

In support of the first ground of defense it is contended that the correct legal title of the plaintiff corporation is "Board of Commissioners of the Charity Hospital," and that that was recognized to be its title by Act 145 of 1890.

We find that in that act the governing board of the hospital is referred to as "Board of Administrators," but the name of the institution itself is mentioned as "Charity Hospital of New Orleans." Plaintiff sues as "Charity Hospital of Louisiana" instead of "Charity Hospital of New Orleans." It is evident that no harm can come to any of the parties as a result of the slight error, and that on this point the case is within the doctrine announced by this court in Humphreys v. Cousin, No. 7997 of the docket, decided April 18, 1921 (unreported), in which it was said:

"Where a suit is brought for the use of the real parties in interest by a plaintiff duly authorized to bring it, and where the defendant is not deprived of any of his means of defense and will be protected by the judgment, the action will be maintained notwithstanding that technically the party before the court may not be strictly the proper plaintiff in the case."

See also Rigaud v. Garvey, 8 La. App. 734.

Nor do we agree with defendant in its contention that the statute of 1924, as amended by the Act of 1928, is unconstitutional in that it contains two objects. This contention is based on the fact that section 1 authorizes charity hospitals to collect charges in certain cases and that section 2 requires the board of administrators of charity hospitals to study abuses and to take necessary steps to discourage such abuses.

As we view the statute it embraces one general object: to discourage abuses re-

sulting from the use of the hospital by those able to pay. If the statute be interpreted in this way, then that part of it which authorizes the charity hospitals to collect for services rendered to patients coming "within the provisions of the employers' liability law" is merely one means provided by the legislature itself for the correction of certain of the abuses. The legislature recognized the fact that it had not before it sufficient information to determine what other abuses were being practiced and therefore gave to the institution general authority to investigate these abuses, but at the same time gave to the institution specific authority to put an end to the particular abuse mentioned. The case seems to us to fall within the doctrine announced by the Supreme Court of Louisiana in Louisiana State Board of Agriculture & Immigration v. Tanzmann, 140 La. 756, 73 So. 854, in which the court said:

"The attack upon the constitutionality of the act under which plaintiff is proceeding as based upon the ground of multifariousness of objects is without merit. The act has but one object within the meaning of the Constitution, which is to provide measures of prevention and protection against fruit and crop pests and diseases, and that object is declared in its title. All else, whether in the title or the·body of the act, are but means to the end so declared. State v. J. Foto & Bro., 134 La. 154, 63 So. 859; City of Shreveport v. Kahn, 136 La. 371, 67 So. 35; Thomas v. Board of School Directors, 136 La. 499, 67 So. 345; State v. Doremus, 137 La. 269, 68 So. 605."

To the same effect see Bemis Bag Co. of La. v. Tax Commission, 158 La. 1, 103 So. 337. Furthermore, it should be borne in mind that these provisions of the constitution with respect to dual objects and with reference to subject matter should be interpreted in a liberal sense. State ex rel. Mouton v. Judge, 49 La. Ann. 1535, 22 So. 761. As this court said in City of New Orleans v. Cotonio, 1 Orl. App. 156:

"The requirement of singleness of subject is not intended to embarrass honest legislation, but only to prevent as we have said the vicious practice of joining in one act incongruous and unrelated matters; hence, if all the parts of a statute have a natural connection and reasonably relate, directly or indirectly, to one general and legitimate subject of legislation, the act is not open to. the objection of plurality, no matter how extensively or minutely it deals with the details looking to the accomplishment of the main legislative purpose. 124 U. S. 656; 111·U. S. 1; 105 U. S. 278; 22 W. 351; 118 F. R. 549; 97 F. R. 435; 88 F. R. 449; 54 F. R. 456; State v. De Hart, 109 La. 570, 53 So. 605; Suc. of Bienvenu, 106 La. 595, 31 So. 193; Hope et al. v. City of N. O., 106 La. 345, 30 So. 842; State v. Logan et al, 104 La. 254, 28 So. 912; State v. Ackerman, 51 La. Ann. 1213, 26 So. 80; Allopothic State Board, etc., v. Fowler, 50 La. Ann. 1358, 24 So. 809; Police Jury of Lafourche v. Police Jury of Terrebonne, 49 La. Ann. 1335, 22 So. 376; State v. Rushing, 49 La. Ann. 1530, 22 So. 798; St. Charles St. R. Co. v. Fairex, 46 La. Ann. 1031; Macready v. Schenck, 46 La. Ann. 456; Succession of Defan v. Schaeffer, 39 La. Ann. 455; State of La. v. Henderson, 32 La. Ann. 779; State v. Pilsbury, 31 La. Ann. 1; Garthwaite, Wheeler & Co. v. Wentz et al., 20 La. Ann. 196."

The third contention, that the rendering of the services is not fully proven, and that the value thereof was not shown by a preponderance of the evidence, is without merit. Dr. Bradburn testified as to what services were rendered and Mr. Matthews, the secretary of the institution, stated that the charges made by the institution were based upon those of similar first-class hospitals. Indeed, for the services rendered, 54 days' attention, x-ray photographs, etc., the charge of $250 is manifestly most reasonable.

Let us now consider the fourth defense which was injected into the case on exception of no cause of action filed in this court.

There is no doubt that such an exception may be filed at any stage of the proceedings, and even in the appellate courts. In the absence of the statutes of 1924 and of 1928 the Charity Hospital would have been totally without right to bring suit for services rendered. Therefore, if the statutes are in fact violative of the state or of the Federal constitution, they are entirely without effect, and no cause of action exists. This is one of the exceptions referred to in C. P. art. 902, and is not the case which is presented by an exception directed at insufficiency of pleading. Brown v. Saul, 4 Martin (N. S.) 434; Union Bank v. Dunn, 17 La. 234; La Casse v. N. O. T. & M. R. Co., 135 La. 129, 64 So. 1012.

Defendant, therefore, was within its rights in filing the exception in this court, but, in our judgment, its cause is not saved by that exception for several reasons, first and foremost among which is that, in the enactment of the statutes, the state was exercising its police powers. It has many times been held that: "the fourteenth amendment was not intended to hamper, or to authorize the courts to interfere with the state's exercise of its police power to regulate and promote the morals, health and safety of her citizens."

Shreveport v. Nejin, 140 La. 785, 73 So. 996.

See also State v. Legendre, 138 La. 158; 70 So. 71; Barbier v. Connelly, 113 U. S. 27.

If, however, there could be any doubt that the state was acting properly in the exercise of its police power, it should be borne in mind that it is not every discrimination or distinction which is violative of section 1 of the Fourteenth Amendment to the Constitution of the United States, but that the inhibition is effective only against those discriminations or distinctions which have no reasonable foundation. In a very interesting case, the Louisiana State Board of Medical Examiners v. Charpentier, 140 La. 405, 73 So. 248, the Supreme Court of Louisiana said:

"Defendant has no interest in the exemption of which he complains, except that a similar exemption has not been accorded to him, and his real complaint is that, in denying him a certificate, for which it does not appear that he has applied, authorizing him to practice medicine, for which it does not appear that he possesses any qualifications, and, at the same time, permitting planters, farmers, and the others mentioned to engage in that practice, to the extent provided in the act, plaintiff has denied him the equal protection of the laws.

"It is well settled, however, that a statute, in order to be equal and uniform in its operation, need not extend the same privilege to every individual and corporation, but that particular and appropriate privileges and exemptions may be granted to different classes, respectively, and that:

" 'When the classification of such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.' Lindsley v. Nat. Carbonic Gas Co., 220 U. S. 61, 31 Sup. Ct. 337, 55 L. Ed. 377, Ann. Cas. 1912C, 160; City of New Orleans v. Le Blanc, 139 La. 113, 71 South. 254, 255.

"We find no difficulty in conceiving the state of facts thus referred to as the basis of the action of which defendant complains. Farmers and planters, attendants and midwives, living on plantations, where access to those who are better qualified is difficult, and at times impossible, acquire, ex necessitate, a certain amount of information which enables them to act in emergencies and to deal with the simpler of the ailments which are common

to humanity, when no other treatment is available, and when, in the absence of any treatment, serious consequences would result."

We have experienced no difficulty in conceiving of facts which, in our minds, are full justification for the enactments in question. In the first place charity hospitals are just what the name implies: institutions for the rendering of hospital and medical services to those who are not in position to pay. It is reasonable to assume that employers of labor are in position to bear the obligation placed upon them by law and among these obligations is the duty of furnishing medical and hospital services to injured employes. The same reasoning applies to insurance companies who, by their policies, agree to indemnify the employers and who thus assume the obligations of the employers. It must be presumed that they are in position to bear the expenses placed upon the employers by the statute, Act 20 of 1914.

As to the employes themselves, we believe it was reasonable to include them within the statute, because, under the compensation act, they are indemnified by the obligation of the employer and the insurer up to the sum specified in the act, and we have no hesitation in saying that the statutes which we are now investigating would be construed as creating an obligation in the employe only to the amount which, under the compensation act, he is entitled to recover back from the employer and the insurer.

Under the statutes referred to, plaintiff is entitled to attorney's fees at 10 per cent on the amount sued for. The lower court awarded plaintiff judgment for $250 and attorney's fees, and, for the reasons given, the judgment appealed from is affirmed.