## SIREN et al. v. MONTAGUE.
### No. 14144.

Court of Appeal of Louisiana. Orleans.
May 30, 1932.

Leslie Moses, of New Orleans, for appellants.

Deutsch & Kerrigan and Bert Flanders, Jr., all of New Orleans, for appellee.

HIGGINS, J.

This is a suit to recover $439.60, representing damages alleged to have resulted from defendant's two-ton truck skidding into plaintiff's Mack two-ton truck, which was parked on the right-hand side of the approach to the Chef Menteur bridge, on the New Orleans side, facing north, on January 12, 1931, about 11 o'clock a. m. The driver of defendant's truck is alleged to have been negligent in driving the truck at an illegal rate of speed, knowing that the approach to the bridge was in a slippery condition due to the heavy rainfall.

The answer of the defendant is practically a general denial.

On the trial of the case on the merits the judge of the lower court held that plaintiff had failed to prove that defendant's driver was negligent, and dismissed the suit.

In this court defendant filed an exception of no right or cause of action on the ground that the suit was filed in the name of the individual partners and not in the name of the partnership which is a separate legal entity; consequently, the right of action is in the partnership and not in the individual partners, and the suit must be brought in the partnership name. There is no doubt that this is a partnership claim because the damaged Mack truck belonged to the partnership consisting of Mr. Siren and Mr. Dumas, but, as we view the allegations of the petition, and taking them as a whole, it appears to us that, while the petition is inartistically drawn as far as alleging the right of action to be in the partnership, we believe the allegations of the petition sufficiently indicate that the partnership was bringing the suit and being represented by the two partners that composed it. While the exception is designated as one of no right or cause of action, it appears to us that it is one of vagueness, and should have been pleaded in limine litis. Dickens v. Singer Sewing Machine Company (La. App.) 140 So. 296; Chopin v. City of New Orleans, 8 La. App. 152; Rigaud v. Garvey, 8 La. App. 736; Charity Hospital v. Axford, 14 La. App. 535, 131 So. 770. We therefore overrule the exception of no right or cause of action.

Passing to the merits of the case, the record shows that the approach to the Chef Menteur bridge on the New Orleans side was constructed of boards covered with tar, and that, when the rain fell upon it, it became very slippery and extremely hazardous to automobile traffic. The approach is 120 feet in length, has a curve in it, and is somewhat steep. On January 12, 1931, about 9 o'clock in the morning, plaintiff's Mack truck, used to transport oil, while on its way to deliver a consignment, was being driven by plaintiff's employee up the ramp in a northerly direction towards Mississippi. Prior to the time that plaintiff's truck arrived at this point, an automobile had skidded off the approach and gone through the railing, and the driver of it had been killed. A truck belonging to Frey & Co. was on the right-hand side of the approach facing north, and was engaged in an attempt to salvage the disabled automobile. Plaintiff's truck, in attempting to pass Frey & Co.'s truck skidded into it, the right front portion of plaintiff's truck striking the left rear side of Frey & Co.'s truck, and causing some damage to plaintiff's vehicle, and resulting in it becoming disabled. It was necessary to push the truck to the right side of the road to the rear of the Frey & Co.'s truck, and adjacent to the right railing of the ap-

proach to the bridge, facing north. A little while later a Ford car, in attempting to negotiate the approach to the bridge, skidded into plaintiff's truck and caused some further damage. About 11 o'clock a. m. defendant's cabin two ton-truck in charge of its chauffeur came over the bridge from Mississippi going in the direction of New Orleans. As the driver attempted to go down the approach to the bridge where plaintiff's truck was parked, defendant's truck skidded, causing the rear of it to go forward so that it then faced in the direction from which it had come; i. e., north or towards Mississippi. Defendant's truck then recrossed the bridge in order to turn and come back over the bridge towards New Orleans or south, stopped at a service station at the foot of the approach to the bridge on the New Orleans side and informed Mr. Dumas, one of the partners and Moore, the driver of plaintiff's truck, that the Mack truck was parked in a very dangerous position.

The evidence is conflicting on the question of whether or not the rear end of defendant's truck struck the front right portion of plaintiff's truck, plaintiff's witnesses asserting that it did, and defendant's witnesses insisting that it did not.

The witnesses for both plaintiff and defendant all testify that innumerable accidents happened at this point every time it rained due to the fact that the approach was built of boards covered with tar, causing it to become extremely slippery when rain fell upon it, and that at the time the accident occurred it was raining heavily.

It is conclusively shown that, in spite of the efforts of other drivers to negotiate the turn in the approach to the bridge, their cars skidded and some of them went over the rail. Plaintiff's driver testified that in attempting to go up the ramp, although he kept his truck under proper control, going at a slow rate of speed, it skidded into the truck owned by Frey & Co., causing the shackle bolt on the axle to be broken, the fender to be bent, and other damage to the front portion of the truck.

We feel that just because the defendant's truck skidded at this point would not raise a presumption of negligence on the part of the defendant's driver that he was operating the machine at an excessive rate of speed or that he failed to keep it under proper control, because it appears that the approach was considered so dangerous, in fact, so hazardous that it was subsequently rebuilt with shells.

The plaintiff sought to prove the allegations of the petition that the driver of defendant's truck was operating it at an unlawful rate of speed by introducing the testimony of the bridge tender and the driver of their truck. The bridge tender, on direct examination, testified that defendant's truck was coming over the bridge at a rapid rate of speed, and that he saw it from the front of the house where he stayed, adjacent to the bridge; that he attempted to climb a ladder to get to the approach in order that he might flag defendant's truck, because he knew that the ramp was practically a death trap. At one point in his testimony he says that, as he attempted to climb the ladder, defendant's truck was passing him on the approach to the bridge, but later contradicts this statement by saying that he succeeded in climbing the ladder in time to flag the driver of defendant's truck when it was still fifteen feet away from him.

Moore, the driver of plaintiff's truck, testified that he saw defendant's truck approaching and crossing the bridge at a fast rate of speed, heard the crash, but did not see the accident.

As we read the testimony of these two witnesses, neither of them saw the defendant's truck immediately preceding the time it was said to have skidded into the plaintiff's parked truck, and consequently, they cannot say how fast the truck was going at that time.

The companion of the driver of defendant's truck, who was sitting beside him, testified that he was dozing, but that his recollection was that they went over the bridge at a rate of speed of ten or fifteen miles an hour, but that he was not paying close attention. He says he felt no shock from any impact.

The driver of defendant's truck testified that he had crossed the bridge often, knew of the dangerous approach, and in attempting to descend the ramp did so at a slow rate of speed; that, notwithstanding every possible precaution, the rear of his truck made a complete half circle, causing it to face in the direction from which it had come; that he then recrossed the bridge in order to turn so that he might be able to come over the bridge towards New Orleans; that his truck did not collide with plaintiff's; and that he stopped at the service station and warned the plaintiff's driver that his truck was in a dangerous place.

The photographs introduced in evidence by the plaintiff show very slight damage to the left rear side of defendant's truck; the damage consisting of some negligible scratches and some infinitesimal damage to the woodwork. This physical fact is corroborative of the testimony of defendant's driver that he was driving at a very slow rate of speed when his truck skidded.

We might further point out that plaintiff's truck was parked with its right side adjacent to the railing of the bridge, facing in the direction of Mississippi or north. The photograph introduced in evidence by plaintiff showing the extensive and crushing damage

to its truck shows very plainly that the blow was struck on the right side and not on the left side, because that side was not damaged. It is quite improbable that the left rear portion of defendant's truck could have struck the right front side of plaintiff's truck so as to cause so much damage, in view of the respective positions of the trucks.

It is equally improbable that the left rear side of defendant's truck could have inflicted such great damage to the right front part of the Mack truck, a heavy machine, without also sustaining rather severe damages. But the photographs of that part of defendant's truck which is said to have come into contact with plaintiff's truck is practically undamaged.

Counsel for both the plaintiff and the defendant have relied upon the doctrine announced by the Supreme Court in the case of Barret v. Caddo Transfer & Warehouse Co., Inc., 165 La. 1075, 116 So. 563, 564, 58 A. L. R. 261. In that case the plaintiff's building was located at the intersection of Louisiana street and an alley which met at right angles. A large iron post supported the corner of the building adjacent to the alley. There was a considerable incline in Louisiana street, with a downward grade towards the alley. The driver of defendant's truck, on a rainy day when the pavement was slippery, going about eight or ten miles per hour, in attempting to turn into the alley, ran into the iron post, knocked it down, and caused considerable damage to the building. The plaintiff sued for the cost of repairing the building. The court said:

"It is settled that the mere fact that an automobile skidded is not evidence of negligence. Berry on Automobiles, § 156; Huddy on Automobiles, § 336; Cyc. on Automobile Law, p. 269.

"As is well said in Linden v. Miller, 172 Wis. 20, 177 N. W. 909, 12 A. L. R. 665:

"'Skidding may occur without fault, and when it does occur it may likewise continue without fault for a considerable space and time. It means partial or complete loss of control of the car under circumstances not necessarily implying negligence. Hence plaintiff's claim that the doctrine of res ipsa loquitur applies to the present situation is not well founded. In order to make the doctrine of res ipsa loquitur apply, it must be held that skidding itself implies negligence. This it does not do. It is a well-known physical fact that cars may skid on greasy or slippery roads without fault either on account of the manner of handling the car or on account of its being there.'

"If, in the present case, the plaintiffs relied solely upon the fact of the skidding of the truck and the resultant injury to their building, their demand for damages would have to be rejected and their case dismissed."

The court held that the plaintiff had proved that the driver of defendant's truck was negligent in two respects: First, in attempting to turn from the street into the alley at a speed of eight or ten miles per hour when he knew that the street was slippery and that he was driving a heavy truck on a down grade; and, second, that he came too far to the left in approaching the alley and therefore had to turn too sharply in order to enter the alley.

Since our Supreme Court recognizes the doctrine that the mere fact that an automobile skids is not evidence of negligence, and that the doctrine of res ipsa loquitur does not apply, in such a situation, it is necessary for the plaintiff to allege and prove the charge of negligence against the operator of the motor vehicle, and therefore the question of liability in each case depends upon the facts and circumstances surrounding the case.

In the case at bar, the trial court found that plaintiff had failed to prove the charges of negligence against defendant's driver, and, after a careful reading of the record, we have reached the conclusion that his finding is correct.

For the reasons assigned, the judgment appealed from is affirmed.

Judgment affirmed.

JANVIER, J. (concurring).

I agree with the conclusion reached by my associates that the operator of defendant's truck was not at fault, and I concur in the decree dismissing the suit, but I believe that the exception of no right of action should have been sustained and the suit dismissed on this ground, instead of on the merits.

The exception was based on the fact that plaintiffs brought suit as individuals for damage alleged by them to have been sustained by property belonging to an existing partnership.

The persons composing a partnership have no right, so long as the partnership exists, to bring suit in their individual names on a partnership claim. In the syllabus of Wolf & Sons v. New Orleans Tailor-Made Pants Co. et al., 52 La. Ann. 1357, 27 So. 893, we find the following:

"During the existence of a commercial partnership, suits in its favor should be brought in its name as a partnership, and under the firm name, and as appearing through and represented by all of the partners composing the partnership.

"* * * The suits should not be brought in the names of the individual partners."

In E. B. Hayes Machinery Co. v. Eastham, 147 La. 347, 84 So. 898, 899, the Supreme Court said: "Under the civil law, which prevails in this state, a partnership is a legal entity entirely separate and distinct from the persons who compose it, and may have its

own creditors and debtors to the same extent as the individual partners. Newman v. Eldridge, 107 La. 315, 31 So. 688; Stothart v. Hardie & Co., 110 La. 700, 34 So. 740; Smith v. McMicken, 3 La. Ann. 322. So long as the partnership is not dissolved, it alone can maintain an action on the firm's claims, and even though all its members join therein, such a suit cannot be maintained in the absence of the partnership as a party plaintiff."

It is very evident from a reading of the two decisions above cited that the members of a partnership have no right whatever to stand in judgment on a partnership claim so long as the partnership exists. There is a total absence of right in them as individuals.

The exception of no right of action was filed in this court, and the question which it presents was not considered below; for this reason plaintiffs claim that the exception came too late. They cite several cases holding that a plea of want of capacity is a dilatory exception and cannot be filed after issue joined.

The exception does not challenge the authority or capacity of plaintiffs, but denies that any rights exist in them. It charges that the claim belongs to the partnership, and to the partnership only. The cases cited are not in point. I can well see that, if a tutor, for instance, brings suit as tutor, an exception challenging his right to appear as tutor on the ground that he is not properly qualified must be filed in limine, or that the, qualifications of an administrator who appears in his said capacity cannot be attacked after issue joined. But that is not the case which is presented here. Here individuals appear, make claims as individuals, ask for judgment as individuals, and allege that the property for the damage of which claim is made belongs to an existing partnership.

I cannot agree with my associates that this exception is in effect one of vagueness. There is nothing vague about the petition. The exception, being one of no right of action founded on a total absence of right in plaintiffs, may be filed at any time and even in the appellate court.

In Brown & Sons v. Saul et al., 4 Mart. (N. S.) 434, 16 Am. Dec. 175, the Supreme Court said: "A total want of legal right in a suitor, in relation to the matters in litigation, ought to be taken into consideration and acted on by courts of justice, at any stage of a cause."

In La Casse v. New Orleans, T. & M. R. Co., 135 La. 129, 64 So. 1012, 1013, is found the following: "We agree with defendant that a total absence of right on the part of the plaintiff may be urged at any stage of the cause." See, also, Montford v. Schmidt, 36 La. Ann. 750.

I do not feel that this court has a right to construe a petition filed by individuals as, in effect, an inartistically drawn petition on behalf of a partnership. If this court may thus rewrite the petition, why could not the courts have done the same thing in the three cases just above cited?

I concur in the decree.